**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION**

**JASON M. MANNING/ROGERS,
ADC #108709**                                                                                          **PLAINTIFF**

**V.**                     **CASE NO. 2:20-CV-175-DPM-BD**

**DEEN**, *et al*.                                                                                           **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.     Procedure for Filing Objections**

This Recommendation for dismissal has been sent to Chief Judge D.P. Marshall Jr. Any party who disagrees with the findings or conclusions set out in the Recommendation may file objections. To be considered, objections must be received in the office of the Court Clerk within 14 days. Objections should be specific and should include the factual or legal basis for the objection.

If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record. If the parties do not file objections, they may waive any right to appeal questions of fact.

**II.    Background**

Plaintiff Jason M. Manning/Rogers, an inmate at the East Arkansas Regional Unit (EARU) of the Arkansas Division of Correction (ADC), filed this civil rights lawsuit without the help of a lawyer. (Doc. No. 2) Mr. Manning/Rogers alleges that he contracted COVID-19 because the Defendants failed to prevent spread of the infection at the

EARU.[1] (Doc. No. 5) Defendants Deen, Lay, and Randle have moved to dismiss all claims against them.[2] (Doc. No. 12) Mr. Manning/Rogers has not responded to the Defendants' motion.

### III. Analysis

#### A. Factual Allegations in Mr. Manning/Rogers's Complaint

According to the allegations in the complaint, from the outset of the COVID-19 pandemic, Defendant Randle instructed officers under his supervision to operate the prison as if COVID-19 did not exist. (Doc. No. 2 at p.6) As a result, Mr. Manning/Rogers alleges that ADC officials failed to take adequate measures to protect him from COVID-19 infection. Mr. Manning/Rogers complains that unnamed EARU officers failed to use appropriate protective wear, including gloves, and failed to provide inmates with adequate cleaning supplies to protect against COVID-19. (Doc. No. 2 at pp.5-6, 8-9)

According to allegations in the complaint, on an unspecified date, Mr. Manning/Rogers reported to work based on his fear that he would be issued a major disciplinary for refusing to work.[3] (Doc. No. 2 at p.6) As a result, Mr. Manning/Rogers claims that he contracted COVID-19. (Doc. No. 2 at p.6)

---

[1] The Court previously dismissed Mr. Manning/Rogers's claims against the ADC. (Do. No. 14)

[2] The Clerk of the Court is instructed to update the names of Defendant Deen to Jeffrey Deen; Defendant Lay to Gaylon Lay; and Defendant Randle to Kenyon Randle.

[3] In his complaint, Mr. Manning/Rogers alleges that other inmates have been issued major disciplinaries based on their refusal to work during the COVID-19 pandemic.

Mr. Manning/Rogers also alleges that Defendant Randle attempted to transfer inmates who had tested positive for COVID-19 into his barracks, where there were inmates who had not yet received their COVID-19 test results. (Doc. No. 2 at p.7) Mr. Manning/Rogers explains that the inmates refused to allow the inmate-transfer to occur.

B. Standard

In deciding whether Mr. Manning/Rogers has adequately stated a claim for relief, the Court must assume that the allegations in the complaint are true, then determine whether those allegations, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007) (citations omitted). A complaint cannot simply "[leave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." *Id.* at 561 (citation omitted). Rather, the facts set forth in the complaint must "nudge [the] claims across the line from conceivable to plausible." *Id.* at 570.

C.  Deliberate-Indifference Standard

To proceed with deliberate-indifference claims, Mr. Manning/Rogers must allege facts showing that he faced an objectively serious threat to his health and that these Defendants knew of the threat, but demonstrated a lack of care, "equal to criminal recklessness." *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011). Even if the Defendants knew that COVID-19 posed a substantial risk to inmates' safety, they cannot be held liable, "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

D. Sovereign Immunity

A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989). Accordingly, Mr. Manning/Rogers's claims for money damages from the Defendants in their official capacities are barred by sovereign immunity.

E. Qualified Immunity/Individual Capacity Claims[4]

Mr. Manning/Rogers alleges that Defendants Deen, Lay, and Randle required inmates to continue to work, which required them to share tools and equipment, and that they failed to assure appropriate social distancing among inmates in the midst of the COVID-19 pandemic. Defendants argue they are entitled to qualified immunity on these claims.

Public officials are immune from liability unless their conduct violated clearly established federal law; and then, only if a reasonable person would have known that the conduct was a violation of the law. *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020) (*en banc*) (internal quotation marks omitted). Stated another way, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 846 (8th Cir. 2011) (citing *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007)).

---

[4] Defendants are entitled to dismissal under Rule 12(b)(6) if they show they are entitled to qualified immunity 'on the face of the complaint.'" *Vandevender v. Sass*, 970 F.3d 972 (8th Cir. 2020) (internal citations and quotations omitted).

4

The first question, therefore, is whether Defendants violated Mr. Manning/Rogers' rights by requiring him to work when no cases of COVID-19 had been diagnosed at the EARU. Even if this conduct could be deemed a violation, the Defendants are not liable unless the Court determines that reasonable correction officers would have understood that requiring Mr. Manning/Rogers to report to work would be so dangerous that it would be a violation of his rights. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation omitted). The law, as it existed at the time of the events giving rise to this lawsuit, "must have placed the statutory or constitutional question beyond debate." *Dillard*, 961 F.3d at 1052 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Mr. Manning/Rogers has attached a grievance he wrote on April 17, 2020, to his complaint. (Doc. No. 2 at p.14) In that grievance, he complains about the danger of having to report for work in the field, explaining that he had to share tools and stand close to other inmates while working.

On May 26, 2020, the Warden responded to Mr. Manning/Rogers's grievance, explaining that the ADC was taking necessary precautions to keep the community safe. The Warden also noted that, as of that date, there had not been a positive COVID-19 case at the EARU. (Doc. No. 2 at p.14)

On July 8, 2020, Director Straughn responded to Mr. Manning/Rogers's grievance appeal, noting that inmates were advised to wear their masks and take the necessary hygiene precautions to prevent the spread of COVID-19. The Director noted that "[e]very effort is being made to provide safety and security to all during this time." (Doc. No. 2 at p.14)

At the time of the Warden's response to Mr. Manning/Rogers's grievance, there were no cases of COVID-19 at the EARU. Reasonable correction officers would not have known that requiring Mr. Manning/Rogers to report to work outdoors alongside other inmates was a violation of his clearly established rights. Further, the Director's response indicates that ADC officials were taking various measures to protect inmates, including providing masks to inmates and encouraging good hygiene practices. Accordingly, Defendants are entitled to qualified immunity on this claim.

Mr. Manning/Rogers's claim that Defendant Randle attempted to transfer inmates who had tested positive COVID-19 to his barracks, where there were inmates who had not received their COVID-19 test results also fails. This allegation, even if true, cannot support a claim that Defendant Randle was deliberately indifferent to Mr. Manning/Rogers's health and safety. COVID-positive inmates were ultimately not allowed to enter the barracks with inmates who were awaiting test results. As it turns out, Mr. Manning/Rogers was already COVID-positive on June 9, 2020, according to his complaint, when Defendant Randle was allegedly considering the transfer at issue. (Doc. No. 2 at p.12)

Mr. Manning/Rogers has failed to state facts to support his claim that Defendant Randle acted with deliberate indifference to his safety, even assuming all allegations in the complaint are true. Defendant Randle is entitled to qualified immunity.

## IV.     Conclusion

The Court recommends that the Defendants' motion to dismiss (Doc. No. 12) be GRANTED, this 4th day of December, 2020.

_____
UNITED STATES MAGISTRATE JUDGE